UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| ROCKWELL KING, ET AL., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | CIVIL ACTION NO. |
| VS. | ) | |
| | ) | 3:05-CV-1626-G |
| LINCOLN FINANCIAL ADVISORS | ) | |
| CORPORATION a/k/a LINCOLN | ) | **ECF** |
| FINANCIAL GROUP, ET AL., | ) | |
| | ) | |
| Defendants. | ) | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Before the court is the motion of the plaintiffs, Rockwell King, Cora King,

Pacific High Point, LLC, Pacific Heights, LLC, Santa Margarita Partners, Pacific

Shoreline Corporation, John M. Borders, Pamela Borders individually and as trustee

of Pam Borders Irrevocable 1997 Trust, JB Sunburst Investments, LLC, Sunburst

Investment Partners, Sunburst II, Inc., John Gregory Borders as trustee of the John

Gregory Borders Irrevocable 1997 Trust, Jeffrey Alan Borders as Trustee of the Jeffery

Alan Borders Irrevocable 1997 Trust, Gab Investments I, LLC, and Gab Investments

II, LLC, (collectively, "the plaintiffs"), to remand this case to the state court from which it was previously removed. For the reasons stated below, the motion is granted.

## I. BACKGROUND

On June 23, 2005, the plaintiffs filed an original petition in the County Court at Law No. 2 of Dallas County, Texas.  Plaintiff's Original Petition, Request for Disclosure and Motion for Level Three Discovery Plan ("Petition"), *attached to* Notice of Removal *as* Exhibit C.  Pursuant to 28 U.S.C. § 1446(b), Lincoln Financial Advisors Corporation a/k/a Lincoln Financial Group, David Rhodes, and Reagan Lorenzen (collectively, "the defendants") filed a timely notice of removal.  Defendant Lincoln Financial Advisors Corporation, David Rhodes and Reagan Lorenzen's Notice of Removal ("Notice of Removal").  Sara Johnson ("Johnson"), the only other defendant, consented to the removal.[1]  Consent to Removal, *attached to* Notice of Removal *as* Exhibit A.

In their original petition, the plaintiffs assert the following nine claims founded on state law:  (1) unjust enrichment; (2) breach of fiduciary duty; (3) fraud; (4) negligent misrepresentation; (5) negligence/professional malpractice; (6) breach of contract; (7) declaratory judgment; (8) civil conspiracy; and (9) violation of the Texas Deceptive Trade Practices Act ("TDTPA").  Petition ¶¶ 116-175.

---

[1]     Johnson was subsequently dismissed without prejudice pursuant to the plaintiffs' unopposed motion.  Order, filed July 17, 2006.

These claims arise from transactions associated with a tax strategy developed and marketed by the defendants and their associates in the 1990s.  Petition ¶¶ 23, 34.  The defendants, serving primarily as marketing agents for the tax strategy, allegedly represented to prospective clients that the tax strategy would generate substantial federal income tax benefits.  *Id.* ¶ 35.  As a part of the scheme, the defendants further represented to the plaintiffs that independent legal opinions from specific law firms would support the strategy.  *Id.* ¶¶ 39, 51, 62.  However, unbeknownst to the plaintiffs, the legal opinions were actually generated by the very law firms that developed the tax strategies and recruited the defendants to market them.  *Id.* ¶¶ 34-35.

 Most of the plaintiffs had bought into the plan by the summer of 2000.  *Id.* ¶¶ 37, 41, 51.  As a part of the tax strategy, clients purchased two opposing European-style digital options and transferred those options into a partnership.  *Id*. ¶ 24.  Although the defendants represented to the plaintiffs that the options had a potential for profit, they actually had no such potential because the transactions inevitably cancelled each other out.[2]  *Id.* ¶¶ 25-26.  Transferring these economically

---

[2]     "[T]o hold the risk and the resulting profit potential to a minimum, the FX Contracts are structured as follows:  Each client entered into two opposing transactions -- one where the client would be PAID if the spot rate on a particular foreign currency was at or below a certain rate, and one where the client would have to PAY OUT if the spot rate was at or below a certain rate.  The two rates that were set . . . were different by only *fractions of a penny*.  On all of the FX Contracts, the trigger occurred when the spot rate on the underlying currency pair . . . was at or

(continued...)

valueless options into the partnership created an artificially high basis for the client's partnership interest. *Id.* ¶¶ 25-27. The supposed income tax benefits emerged out of this artificially high basis. *Id.*

In December, 1999, the IRS published Notice 1999-59, entitled Tax Avoidance Using Distribution of Encumbered Property, which clearly notified accountants, lawyers, and other professionals that purported losses stemming from transactions wholly lacking in economic substance were not allowable for federal income tax purposes. *Id.* ¶ 77. IRS Notice 2000-44, entitled Tax Avoidance Using Artificially High Basis, was published on August 11, 2000. *Id.* ¶ 27. It notified accountants, lawyers, and other professionals that the IRS considered illegal any tax strategy that created an artificially high basis purely for the purpose of avoiding taxation. *Id.* The plaintiffs assert that the defendants never disclosed to the plaintiffs the effect or existence of these IRS notices; rather, the defendants continued to market the tax strategy even after the publication of the notices. *Id.* ¶ 30. The plaintiffs further assert that the defendants failed to disclose that the digital options had no potential for profit and that the defendants misrepresented the nature of their

---

[2](...continued)
below a specific spot rate *on a certain date at a certain time*. Thus, there was almost no chance of only one position being acted upon. Either the spot rate would be above both, so neither were acted upon, or the spot rate would be below both, so both were acted upon . . .. Of course, Plaintiffs were never informed that they had as good of a chance of winning the lottery as they had of earning a profit on the FX Contracts." Petition ¶¶ 25-26 (footnotes omitted) (emphasis in original).

relationship with each other and the law firms who generated the legal opinions.  *Id.*

The plaintiffs argue that, as a result of these non-disclosures and misrepresentations,

they suffered significant pecuniary damages.  *Id.* ¶ 111.

## II.  ANALYSIS

Title 28 U.S.C. § 1441(a) permits removal of "any civil action brought in a

State court of which the district courts of the United States have original

jurisdiction."  Under this statute, "[a] defendant may remove a state court action to

federal court only if the action could have originally been filed in the federal court."

*Aaron v. National Union Fire Insurance Company of Pittsburg, Pennsylvania*, 876 F.2d

1157, 1160 (5th Cir. 1989), *cert. denied*, 493 U.S. 1074 (1990) (citations omitted).

Removal jurisdiction must be strictly construed, however, because it "implicates

important federalism concerns."  *Frank v. Bear Stearns & Co.*, 128 F.3d 919, 922 (5th

Cir. 1997); see also *Willy v. Coastal Corporation*, 855 F.2d 1160, 1164 (5th Cir.

1988).  Furthermore, "any doubts concerning removal must be resolved against

removal and in favor of remanding the case back to state court."  *Cross v. Bankers

Multiple Line Insurance Company*, 810 F. Supp. 748, 750 (N.D. Tex. 1992); see also

*Shamrock Oil & Gas Corporation v. Sheets*, 313 U.S. 100, 108-09 (1941); *Healy v. Ratta*,

292 U.S. 263, 270 (1934).  The burden of establishing federal jurisdiction is on the

party seeking removal.  *Frank*, 128 F.3d at 921-22; *Willy*, 855 F.2d at 1164.

District courts have federal question jurisdiction over civil cases "arising under the Constitution, laws, or treaties of the United States."  28 U.S.C. § 1331; *Frank*, 128 F.3d at 922.  In determining whether a claim arises under federal law, the well-pleaded complaint rule allows a plaintiff to be the "master to decide what law he will rely upon" in pursuing his claims.  *The Fair v. Kohler Die & Specialty Company*, 228 U.S. 22, 25 (1913); *Beneficial National Bank v. Anderson*, 539 U.S. 1, 6 (2003); *Aaron*, 876 F.2d at 1160-61.  Where potential remedies exist under both state and federal law, a plaintiff may choose to proceed only under state law and avoid federal court jurisdiction.  *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987); *Carpenter v. Wichita Falls Independent School District*, 44 F.3d 362, 366 (5th Cir.1995).

The recent Supreme Court decision in *Grable & Sons Metal Products, Inc. v. Darue Engineering & Manufacturing*, 545 U.S. 308, 125 S. Ct. 2363 (2005), illustrates that a cause of action created by federal law is not a necessary condition for federal question jurisdiction under 18 U.S.C. § 1331 or removal jurisdiction under 28 U.S.C. § 1441(a).  *Grable*, 545 ___ U.S. ___, 125 S. Ct. at 2366-67.  The relevant post-*Grable* inquiry is whether a state-law claim "necessarily raises[s] a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities."  *Id*. at 2368.

This inquiry is a two-step process: the court must (1) determine whether a federal question is sufficiently substantial to support federal jurisdiction and (2) consider whether the exercise of jurisdiction would disrupt "any congressionally approved balance of federal and state judicial responsibility." *Grable*, 125 S. Ct. at 2368. A federal question is sufficiently substantial if "the vindication of a right under state law necessarily turns[s] on some construction of federal law." *Franchise Tax Board of State of California v. Construction Laborers Vacation Trust for Southern California*, 463 U.S. 1, 9 (1983). A federal question is not sufficiently substantial, however, if it appears only in an alternative argument for relief. See *Howery v. Allstate Insurance Company*, 243 F.3d 912, 918 (5th Cir.) (citing *Christianson v. Colt Industrial Operating Corp.*, 486 U.S. 800, 809-810 (1988)), *cert. denied*, 534 U.S. 993 (2001). If the court does find a substantial federal question, it must then consider whether an exercise of jurisdiction under the particular circumstances would open the proverbial floodgates of litigation into the federal system. *Grable*, 125 S. Ct. at 2367-68. The court should decline to exercise jurisdiction if doing so would cause a significant shift of cases into the federal system from the state system. *Id.*

A. <u>Substantial Disputed Federal Question</u>

The defendants argue that federal questions pervade the plaintiffs' petition and that a determination of the validity of the IRS notices is central to the resolution of the entire case. Response at 6-8. The defendants note that the IRS notices are not

binding upon this or any other court but are more properly understood as proclamations of the IRS's position regarding the tax strategy in question. *Id.* at 6; see *Guilzon v. Commissioner of Internal Revenue*, 985 F.2d 819, 822 (5th Cir. 1993) (discussing the non-binding nature of IRS notices). Upon that basic premise, the defendants contend that if the advice they offered to the plaintiffs was in fact correct (*i.e.*, the tax strategy was legitimate) and the IRS notices were actually incorrect, then the plaintiffs' claims fall apart. Response at 7. Furthermore, since neither a tax court nor an Article III federal court has ruled on the specific issues addressed in the IRS notices, the question of their accuracy is undecided. *Id.* at 6. Finally, the defendants argue that, unlike the plaintiffs, they have never adopted, nor acquiesced in, the IRS's position; thus, the accuracy of the notices is disputed. *Id.* at 5-6. On those grounds, the defendants argue that the entire case turns on a substantial contested issue of federal law -- namely, the validity of the IRS notices. *Id.* at 6-9.

In asserting this position, the defendants rely on *Grable*, where the United States Supreme Court upheld an exercise of federal question jurisdiction over state-law claims. *Grable*, 125 S. Ct. at 2368 (the plaintiff's claims were premised on the failure of the IRS to give it adequate notice of sale). The Court explained that the meaning of the federal statute appeared to be "the only legal or factual issue contested in the case." *Id.* Accordingly, the Court found that a federal question existed. *Id.* In the case at bar, the accuracy of the IRS notices is relevant to a portion

of the plaintiffs' claims; unlike *Grable*, however, the majority of the plaintiffs'

allegations here rest not on the construction of the IRS notices but from the

defendants' primary conduct.  Petition ¶¶ 121-175.

A couple of examples illustrate the point.  The plaintiffs allege, *inter alia*, that

the defendants breached their fiduciary duty to the plaintiffs.  *Id.* ¶ 123.  To prevail

on this claim, the plaintiffs must prove (1) that the defendants owed them a fiduciary

duty, (2) that they breached that duty, (3) that the breach resulted in injury, and

(4) that the breach was the proximate cause of that injury.  See *In re Segerstrom*, 247

F.3d 218, 225 n.5 (5th Cir. 2001) (applying Texas law); *Jones v. Blume*, ___ S.W.3d

___, 2006 WL 1688434 (Tex. App.--Dallas, June 21, 2006) at *4.  The court is not

asked to resolve any substantial federal issue because the plaintiffs allege only that the

defendants breached their fiduciary duty.  In other words, the plaintiffs allege facts

that, if proven, would satisfy the elements of the cause of action without any

reference to the correctness or accuracy of the IRS notices.  The focus of the

factfinder would be on the propriety of the defendants' conduct, not on the legality of

the tax strategy.

Similarly, the plaintiffs allege that the defendants defrauded them by making

knowingly false affirmative representations and intentional omissions of material facts

to obtain substantial service fees.  Petition ¶ 128.  To prevail on this claim, the

plaintiffs must prove that the defendants:  (1) made a material representation;

(2) that was false when made; (3) that they knew the representation was false or made it recklessly without knowledge of its truth; (4) that they made the representation with the intent that the plaintiffs should act upon it; and (5) that the plaintiffs acted in reliance upon it and suffered injury as a result. *Great Plains Trust Company v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 322 (5th Cir. 2002) (citing *Beijing Metals & Minerals Import/Export Corp. v. American Business Center, Inc.*, 993 F.2d 1178, 1185 (5th Cir. 1993) (applying Texas law)).  The court need not determine the legality of the IRS notices to rule on this claim.  The plaintiffs can prevail if they establish that the "independent" legal opinions were not actually independent but rather a part of a scheme to defraud them.  Again, the relevant inquiry is whether the defendants' conduct satisfies the elements of the state-law claim, not whether the IRS correctly interpreted federal tax law.

This reasoning applies equally as well to the other seven state-law claims pled by the plaintiffs.[3]  These claims allege facts that, if proven, would allow the plaintiffs to recover from the defendants without regard to the validity of the IRS notices.  Therefore, in accordance with *Howery*, the federal question cannot be considered substantial.

---

[3]     These are unjust enrichment, negligent misrepresentation, negligence/professional malpractice, breach of contract, declaratory judgment, civil conspiracy, and violation of the TDTPA.  Petition ¶¶ 116-120, 134-175.

Dozens of factually related cases are pending throughout the country.  *See* Response at 5-6.  These related cases arise out of the same tax strategy and involve identical arguments and issues.  The majority of courts examining subject matter jurisdiction in these cases have found it lacking.  See *Cantwell v. Deutsche Bank Securities, Inc.*, No. 3:05-CV-1378-D, 2005 WL 2296049 (N.D. Tex. Sept. 21, 2005) (remanding similar state-law claims arising out of the same tax strategy because no substantial federal question existed); *Sheridan v. New Vista, LLC*, 406 F. Supp.2d 789 (W.D. Mich. 2005) (granting the plaintiff's motion to remand); *Acker v. AIG International, Inc.*, 398 F. Supp. 2d 1239 (S.D. Fla. 2005) (granting plaintiff's motion to remand); but see *Becnel v. KPMG, LLP*, 387 F. Supp.2d 984 (W.D. Ark. 2005) (denying the plaintiff's motion to remand and holding that the validity of the IRS notices is a substantial federal question).  Accordingly, the court concludes that the defendants have failed to establish that the plaintiffs' claims necessarily raise a substantial disputed federal issue.[4]

---

[4]     The defendants failed to carry their burden on the first step of the *Grable* analysis; therefore, it is not necessary for the court to address the sound division of labor question.  However, it appears that the potential for shifting the division of labor from state to federal court is much greater here than in *Grable*.  See *Sheridan*, 406 F. Supp.2d at 795 ("The potential for shifting the division of labor from state to federal courts is much greater in this case [than in *Grable*] because if federal jurisdiction exists here, any malpractice, breach of fiduciary duty, or similar state law claim alleging an unreasonable interpretation of federal law, be it tax, securities, ERISA, etc. would invoke federal question jurisdiction.").

B.  Whether Judicial Estoppel Bars the Plaintiffs' Motion

Notwithstanding their contention that substantial federal questions pervade the plaintiffs' petition, the defendants argue that the plaintiffs are judicially estopped from arguing that a federal question does not exist.  Response at 3-4.  In a related New York class action, these same plaintiffs, represented by the same counsel, successfully argued that questions of federal law predominated over state law issues. The defendants now assert that the plaintiffs' prior position -- that federal issues predominate -- bars them from arguing here that federal issues are not substantial and disputed.

Judicial estoppel is "a common law doctrine by which a party who has assumed one position in his pleadings may be estopped from assuming an inconsistent position." *Brandon v. Interfirst Corporation*, 858 F.2d 266, 268 (5th Cir. 1988).  The purpose of the doctrine is "to protect the integrity of the judicial process" by "prevent[ing] parties from 'playing fast and loose' with (the courts) to suit the exigencies of self interest."  *Id.*  Judicial estoppel is generally applied when "intentional self-contradiction is being used as a means of obtaining unfair advantage."  *In re Coastal Plains, Inc.*, 179 F.3d 197, 206 (5th Cir. 1999), *cert. denied*, 528 U.S. 1117 (2000).  The Fifth Circuit has stated that judicial estoppel applies: (1) where the position of the party to be estopped is clearly inconsistent with its previous one; and (2) that party must have convinced the court to accept that

previous position. *Ahrens v. Perot Systems Corp.*, 205 F.3d 831, 833 (5th Cir.), *cert. denied*, 531 U.S. 819 (2000). Courts, however, may invoke the equitable doctrine of judicial estoppel at their discretion. *New Hampshire v. Maine*, 532 U.S. 742, 750 (2001).

The defendants point out that the plaintiffs previously argued that "federal tax law and the nationwide standard of care applicable to Federal tax practitioners predominate over individual issues." Response at 5. The plaintiffs contend that their prior position is not "clearly inconsistent" with their position here. *See* Reply at 6. They acknowledge that this case involves issues of federal law but maintain that those issues are not substantial or disputed. See *id.*

The court need not decide whether the plaintiffs' positions are clearly inconsistent because application of judicial estoppel in this case would not effectively serve the policy underlying that doctrine. The primary purpose of judicial estoppel is to protect the integrity of the judicial system by preventing a party from abandoning an established position to fit the exigencies of the moment. *New Hampshire*, 532 U.S. at 749-750. Any threat to the integrity of the judicial process is mitigated when the subsequent position is proffered to a different court. Moreover, these defendants were not present in the class action suit; thus, they could neither have acquiesced in, nor been adversely affected by, the plaintiffs' prior position. See *Davis v. Wakelee*, 156 U.S. 680, 689 (1895) ("where a party assumes a certain position in a legal

proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position, especially if it be to the prejudice of the party who has acquiesced in the position formerly taken by him."). For those reasons, the court declines to apply the equitable doctrine of judicial estoppel.

### III.  CONCLUSION

For the reasons disused above, the plaintiffs' motion for remand is **GRANTED**.  This case is **REMANDED** to the **County Court at Law No. 2 of Dallas County, Texas**.  The clerk shall mail a certified copy of this memorandum opinion and order to the county clerk of Dallas County, Texas.  28 U.S.C. § 1447(c).

**SO ORDERED**.

July 25, 2006.

_____
A. JOE FISH
CHIEF JUDGE